FERNANDO GALLARDO DÍAZ, demandante y apelante, *v.* CAMELIA
RODRÍGUEZ FUERTES, demandada y apelada.

No. 5538.—*Sometido:* Diciembre 3, 1931. *Resuelto:* Diciembre 16, 1931.

*F. Gallardo Díaz*, por su propio derecho; *Leopoldo Feliú*, abogado de la apelada.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

En la Corte de Distrito de Humacao se siguió un pleito de divorcio por Fernando Gallardo Díaz contra su esposa Camelia Rodríguez Fuertes en el que se dictó sentencia el 11 de abril de 1930 declarando la demanda con lugar y por consiguiente roto y disuelto el vínculo matrimonial que unía a los esposos.

El 24 de septiembre siguiente Camelia Rodríguez Fuertes presentó por medio de sus abogados una moción jurada titulada "para anular rebeldía, anular sentencia, relevar a la demandada de esta última y permitir radicar contestación y contrademanda."

En ella alegó, en resumen, que emplazada en el pleito de divorcio, formuló excepción previa que fué desestimada con permiso para contestar; que su intención fué siempre la de contestar, pues no era ella la que había tratado cruelmente y abandonado a su esposo, sino su esposo a ella, pero cuando se disponía a hacerlo, el demandante, con el propósito de inducirla a que no se defendiera, le prometió que si no formulaba oposición a la demanda, quedaría ella con la custodia y guarda de sus hijos hasta que éstos alcanzaran la mayor

edad, retirando además él de su demanda la causa de trato cruel, y la demandada accedió; que en junio 14 de 1930 el demandante radicó una moción pidiendo la entrega de sus hijos, y "que los actos realizados por el demandante, lo fueron con el propósito único de engañar a esta demandada y de defraudarle, como en efecto fué engañada y defraudada, del derecho que tenía a defenderse en esta acción de divorcio."

Se acompañó a la moción la contestación a la demanda negando sus hechos y formulando contrademanda en solicitud del divorcio por trato cruel y abandono del esposo, y una declaración jurada de Leopoldo Feliú, Esq., abogado de la demandada. Parece conveniente transcribir los hechos séptimo y octavo de la declaración jurada del Sr. Feliú. Dicen:

"VII.—Que habiéndose formulado y desestimado la excepción previa y estando ya listo y dispuesto este deponente para formular dicha contestación y contrademanda, ocurrieron conferencias en las cuales fué informado el demandante por este deponente de los propósitos de su dicha cliente; surgieron también conferencias entre este abogado, la demandada y familiares de ella; la demandada insistía en que ella interesaba el que este asunto se terminara cuanto antes para poner término a la situación existente entre ella y el demandante porque éste se embarcaba pronto y que en estas conferencias con ella y con sus familiares el deponente fué autorizado por la demandada a hacer saber al demandante que si éste enmendaba su demanda alegando únicamente el abandono por sus fundamentos y se allanaba y se comprometía a dejar las dos niñas bajo el cuidado y custodia de la demandada hasta su mayor edad, y así se hacía constar en la sentencia que se dictó, la demandada no haría oposición a su acción de divorcio, y dejaría que la misma se tramitara en rebeldía de la demandada y dictada la sentencia de acuerdo con tal proposición, renunciaría el derecho de apelación para que la sentencia fuera firme y ejecutiva en seguida.

"VIII.—Que habiendo conferenciado con el demandante sobre tales hechos y proposición, prometió éste al deponente, en su carácter de abogado de la demandada y mandatario de la misma, el aceptar en todas sus partes dicha proposición y en su consecuencia, se radicó por él en esta Corte la demanda enmendada fechada marzo 14 de 1930, haciéndosele saber al demandante a nombre de la demandada que únicamente con el objeto de poner término rápido

al litigio y de quedarse ella únicamente con la guarda y custodia de las niñas en la forma expresada, dejaría de contestar dicha demanda enmendada y permitiría la sentencia en rebeldía con lo que estuvo conforme el demandante y que en su consecuencia la demandada no contestó ni alegó nada, se anotó su rebeldía y se resolvió el caso en rebeldía de la demandada, y que dicha demandada no asistió a dicha vista habiéndolo hecho por instrucciones de ella su abogado y mandatario, el deponente, con el único fin de escuchar la prueba que se practicó y de ver que se hiciera constar lo convenido en cuanto a guarda y custodia de las niñas, como así se hizo en efecto constar tanto por el demandante como por el deponente, sin que éste tomara parte alguna, ni anunciara ser ni hiciera saber en modo o por medio alguno que había concurrido a tal acto a nombre y representación de la demandada o como abogado de ésta, excepto con el fin ya indicado.''

El demandante formuló una oposición jurada. En resumen negó que indujera a la demandada a que no se defendiera y que la hubiera tratado cruelmente y abandonado, afirmando que lo único que hizo fué eliminar de su demanda la causa de trato cruel e injurias graves y solicitar que sus hijas pudieran permanecer en compañía de la demandada, sin perjuicio de sus derechos en cuanto a la patria potestad sobre las mismas. La oposición termina así:

''Hace alrededor de seis meses que esta Hon. Corte dictó sentencia en este caso la que fué notificada a la demandada renunciando ella su derecho de apelación, siendo, por tanto, dicha sentencia firme y ejecutiva; que dicha sentencia no fué dictada contra la demandada por causa de equivocación, inadvertencia, sorpresa o excusable negligencia ya que la demandada estuvo representada en el juicio, oyó la prueba, tuvo oportunidad de defenderse, renunció voluntariamente a su derecho de apelación, fué notificada siempre de todos los procedimientos habidos en este caso, tuvo conocimiento de las consecuencias legales de dicha sentencia y no ha venido a quejarse de ella hasta que el demandante ha pretendido ejercer los derechos que le concede la ley sobre sus hijas.

''Siendo firme y ejecutiva la sentencia dictada por la Corte en este caso y habiendo renunciado la demandada su derecho de apelación, en este momento la Corte carece de jurisdicción en esta acción.

''Siendo firme y ejecutiva la sentencia dictada por esta Corte

declarando roto y disuelto el vínculo matrimonial existente entre los litigantes, inscrita dicha sentencia en el Registro Civil correspondiente, el demandante subsiguientemente contrajo nuevas nupcias con otra mujer que no es la demandada, razón por la cual ni siquiera podría considerar ninguna cuestión relativa a dejar sin efecto la sentencia dictada en este caso.''

A la oposición se acompañó una declaración jurada del demandante en que se narran detalladamente los hechos ocurridos.·

La corte de distrito tomó bajo su consideración el caso y el 1°. de noviembre de 1930 lo decidió exponiendo en su resolución los antecedentes del mismo y la ley y la jurisprudencia que estimó aplicables, terminando como sigue:

''Considerando que en este caso existe excusable error, equivocación y negligencia por parte de la demandada quien, en su moción expone causas suficientes para ello, y quien, en su contestación y contrademanda, *prima facie,* levanta cuestiones merecedoras de ser juzgadas en su fondo, la corte es de opinión que debe usar la discreción que le concede el art. 140 del Código de Enjuiciamiento Civil vigente, y dictar una resolución, como al efecto lo hace, declarando con lugar la moción radicada por la demandada con fecha 26 de septiembre del año en curso, y en su virtud se anula la rebeldía de la demandada en este caso, anotada el día 31 de marzo del año en curso, y se deja sin efecto la sentencia dictada por esta Corte el día 11 de abril de este mismo año, permitiéndose que conste en autos la contestación y la contrademanda radicadas por la demandada contra la demanda enmendada que aparece radicada el 14 de marzo del año en curso, concediéndose al demandante un término de VEINTE DÍAS, a partir desde esta fecha, para que conteste la contrademanda o alegue contra la misma.''

No conforme el demandante, apeló para ante este Tribunal Supremo. Sostiene que la corte de distrito abusó de su discreción al anular la sentencia y al abrir la supuesta rebeldía y argumenta el error subdividiéndolo así:

''A. En este caso no debe considerarse que la sentencia de divorcio lo fuera en rebeldía;

''B. En este caso no hubo equivocación, inadvertencia, sorpresa o excusable negligencia;

"C. En este caso la petición interesando la nulidad de la sentencia de divorcio no aduce hechos suficientes y es fatalmente defectuosa;

"D. En este caso la demandada es culpable de *laches;*

"E. En este caso no hubo fraude;

"F. En este caso no hubo convenio, (collusion), para crear una causa de acción;

"G. En este caso, suponiendo que fueran falsos los testimonios en que se basó la Corte para decretar el divorcio, ello no anula la sentencia;

"H. En este caso la demandada está impedida (estopped) de atacar la sentencia de divorcio;

"I. En este caso, habiendo contraído segundas nupcias el demandante, la Corte no debió anular .la sentencia de divorcio;

"J. En este caso, la jurisprudencia citada por la Corte inferior al decretar la nulidad de la sentencia de divorcio no es aplicable."

Cada subdivisión es estudiada cuidadosamente con exposición de los hechos y la ley envueltos en la misma.

No analizaremos en detalle todas las subdivisiones. Hemos examinado los autos y los alegatos. Los informes orales contribuyeron mucho a que pudiéramos formar un juicio claro del asunto, y estamos plenamente convencidos de que asiste la razón al apelante.

La demandada estuvo debidamente enterada de cada detalle del procedimiento y contó siempre con el auxilio de un distinguido abogado. No se falló en su rebeldía. Ella formuló excepciones previas y asistió al juicio por su abogado y expresamente. renunció su derecho a apelar de la sentencia. ¿Cómo puede hablarse aquí de inadvertencia, sorpresa o excusable negligencia?

Lo único que da una apariencia de fundamento al caso de la demandada es la prohibición contenida en el artículo 165 del Código Civil, a saber: "En ningún caso puede concederse el divorcio cuando la causa en que se funde sea el resultado de un convenio."

Decimos apariencia de fundamento, porque aquí si bien

se demuestra que hubo un convenio, consta que no lo fué para crear una causa en que fundar la demanda.

El demandante procedió abiertamente. Alegó dos causas de acción. Se emplazó a la esposa. Esta compareció asistida de un letrado y formuló excepciones que fueron desestimadas. Y entonces, no a gestión del demandante sino de la propia demandada, como consta de la declaración jurada de su abogado, fué que el demandante se avino a retirar una de las causas alegadas, aquélla que le obligaría a probar el trato cruel y las injurias graves. El demandante se sostuvo firme en su alegada causa de abandono. Examinados los autos, consta que la sentencia se dictó previa prueba de testigos que declararon bajo juramento ante la corte sobre el abandono y que la corte estimó suficiente para dictar como dictó su sentencia.

La cuestión de los hijos examinada a fondo se convierte en un argumento más en contra de la demandada. Las pequeñas hijas estaban con la madre. Habían surgido ya dificultades durante el pleito con motivo de querer verlas el padre de cuando en cuando. La madre tenía empeño en conservarlas a su lado. Ella no ignoraba la ley. La sentencia de divorcio que solicitaba el padre implicaba la pérdida de los derechos de la madre a su custodia. En el convenio jamás renunció el padre a la patria potestad. Se trataba de una mera concesión temporal que quedó fijada por la sentencia así:

"Y la Corte, a solicitud del propio demandante, dispone además que las hijas habidas en el matrimonio entre el demandante y la demandada, llamadas Carmen Leticia y Camelia Monserrate, por razón de su corta edad, pueden quedar viviendo en compañía de la demandada, sin perjuicio, desde luego, de los derechos que en cuanto a la patria potestad sobre dichas menores la ley concede al demandante, . . . ."

Esa sentencia se dictó en corte abierta estando presente el abogado de la demandada. Luego, registrada en el libro de sentencias, fué expresamente consentida por la demandada.

¿Cómo es posible que si la demandada era realmente el cónyuge inocente, se aviniera a perder la patria potestad conformándose con ese simple pronunciamiento de la sentencia?

Los actos de la demandada constituyen un allanamiento a la demanda enmendada que implica el reconocimiento de la verdad de la existencia de la causa de abandono que fué motivo de prueba en el juicio y fundamento de la sentencia decretando el divorcio. El convenio no es, pues, el prohibido por el artículo 165 del Código Civil. Véanse las decisiones de esta propia corte en *Ortiz* v. *Rodríguez*, 4 D.P.R. 52 y *Loíza* v. *Caballero*, 6 D.P.R. 57.

Pero hay más: el único hecho que pudo proporcionar a la demandada una sombra de justificación para actuar—la moción del demandante solicitando la entrega de sus hijos—había desaparecido cuando el juez tomó bajo su consideración el caso. De los autos consta que el demandante desistió de su moción. Además, la violación del convenio sobre la custodia de los hijos por parte del demandante, hubiera dado lugar a la intervención de la corte para fijar los derechos de ambas partes en relación con el mismo, pero no para anular la sentencia.

Y si a todo esto se agrega que el demandante había ya contraído un nuevo matrimonio, quedando así constituído un nuevo hogar, se impone como conclusión única la de que en efecto se cometió por la corte de distrito el abuso de discreción que como error se señala, *debiendo en tal virtud declararse con lugar el recurso y revocarse la resolución apelada.*

El Juez Asociado señor Hutchison está conforme con la sentencia pero no con todos los fundamentos de la opinión.